UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

ROYAL PARK INVESTMENTS SA/NV,                    :
Individually and on Behalf of All Others          :          No. 17-cv-5916-AJN
Similarly Situated,                              :
                                    Plaintiff,    :
                                                  :
                v.                                :
                                                  :
DEUTSCHE BANK NATIONAL TRUST                      :
COMPANY, as Trustee,                             :
                                                  :
                                  Defendant.      :
-------------------------------------------------------------X

### MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS OF DEFENDANT DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE

Bernard J. Garbutt III, Esq.
Grant R. MacQueen, Esq.
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Tel: (212) 309-6000
Fax: (212) 309-6001
bernard.garbutt@morganlewis.com
grant.macqueen@morganlewis.com

Attorneys for Defendant
Deutsche Bank National Trust Company, as Trustee

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................ 1

RELEVANT BACKGROUND OF *RPI/DBNTC I*................................................................. 3

OTHER RELEVANT BACKGROUND ................................................................................ 4

THE PSAs ............................................................................................................................. 5

ARGUMENT ........................................................................................................................ 5

I.      ALL OF RPI'S CLAIMS SHOULD BE DISMISSED FOR LACK OF
       STANDING ................................................................................................................ 5

      A.     RPI Lacks Standing Because It Fails To Allege An Injury In Fact And
           Cannot Do So Because, By RPI's Own Admission, All The Certificates
           That RPI Alleges It Holds Were Wiped Out Long Before Any
           Indemnification ............................................................................................... 5

      B.     RPI Cannot Rely Upon Some Hypothetical Future Injury Based Upon The
           Possibility Of A Recovery In *RPI/DBNTC I* To Establish Standing ..................... 7

      C.     For The Same Reasons, RPI Cannot Demonstrate A Ripe, Justiciable
           Controversy ...................................................................................................... 9

II.     RPI'S BREACH OF CONTRACT CLAIM AND DECLARATORY
       JUDGMENT CLAIM SHOULD BE DISMISSED ......................................................... 9

      A.     The Plain Language Of The PSAs Forecloses RPI's Breach Of Contract
           And Declaratory Judgment Claims ................................................................... 10

           1.     The Trustee's Indemnification For Its Legal Fees And Expenses
                Incurred In Defending Itself Is Lawful And Provided For Under
                The PSAs ............................................................................................. 10

           2.     Funds That Flow Through The Covered Trusts And Are Used To
                Indemnify The Trustee Do Not "Belong" To Certificateholders............. 11

           3.     RPI's Claim That The Trustee Is Excluded From Indemnification
                Due To RPI's Gratuitous And Passing References to Gross
                Negligence And Willful Misconduct Relies Upon A Flawed
                Interpretation Of The PSAs ................................................................... 13

           4.     RPI's Other Challenges To The Trustee's Entitlement To
                Indemnification Fail Because They Rely Upon Inapplicable Rules........ 15

      B.     To The Extent RPI Bases Its Contract And Declaratory Judgment Claims
           On Allegations That The Trustee's Legal Fees And Expenses Are
           Unreasonable, RPI Fails To Allege *Facts* To Support Those Claims ................. 18

III.    RPI'S NON-CONTRACTUAL CLAIMS SHOULD BE DISMISSED ........................ 19

      A.     RPI's Non-Contractual Claims Should Be Dismissed Because They Are
           Premised Upon The False Assumption That The Trustee Is Not Entitled
           To The Indemnification At Issue ...................................................................... 19

## <u>TABLE OF CONTENTS</u>
(continued)

**Page**

B.  RPI's Non-Contractual Claims Should Be Dismissed Because They Are Duplicative Of RPI's Contract Claim .................................................. 20

C.  RPI's Non-Contractual Claims Should Be Dismissed They Are Barred By The Economic Loss Doctrine.................................................................. 20

D.  RPI's Unjust Enrichment Claim Should Be Dismissed.................................... 21

E.  RPI's Conversion Claim Should Be Dismissed................................................ 21

F.  RPI's Breach Of Trust And Equitable Accounting Claims Should Be Dismissed Because They Are Based Upon Extra-Contractual Duties That The Trustee Does Not Owe To RPI.................................................... 22

IV.  ALTERNATIVELY, IF THE COURT IS NOT INCLINED TO DISMISS RPI'S CLAIMS, IT SHOULD STAY THIS CASE PENDING RESOLUTION OF *RPI/DBNTC I* .......................................................................................... 23

CONCLUSION........................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

17 Vista Fee Assocs. v. Teachers Ins. & Annuity Ass'n of Am.,
    693 N.Y.S.2d 554 (1st Dep't 1999) ........................................................................20

AD Rendon Commc'ns., Inc. v. Lumina Ams. Inc.,
    2007 WL 2962591 (S.D.N.Y. Oct. 10, 2007) .........................................................20

Am. Home Assur. Co. v. Gemma Const. Co.,
    713 N.Y.S.2d 48 (1st Dep't 2000) .........................................................................15

Angel Music, Inc. v. ABC Sports, Inc.,
    112 F.R.D. 70 (S.D.N.Y. 1986) ...............................................................................7

Ashcroft v. Iqbal,
    556 U.S. 663 (2009)...........................................................................5, 14, 18

Associated Indem. v. Fairchild Indus.,
    961 F.2d 32 (2d Cir. 1992)........................................................................9

Barnes v. New York City Hous. Auth.,
    841 N.Y.S.2d 379 (2d Dep't 2007)........................................................12

Berkley Reg'l Ins. Co. v. Weir Bros.,
    2013 WL 6020785 (S.D.N.Y. Nov. 6, 2013) .........................................................15

Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of NJ, Inc.,
    448 F.3d 573 (2d. Cir. 2006)...................................................................21

Boelter v. Hearst Communications, Inc.,
    2016 WL 361554 (S.D.N.Y. Jan. 28, 2016) .........................................................24

Bradley v. Earl B. Feiden, Inc.,
    8 N.Y.3d 265 (2007) .........................................................................13

Breed, Abbott & Morgan v. Hulko,
    531 N.Y.S.2d 240 (1st Dep't 1988), aff'd, 74 N.Y.2d 686 (1989).........................17

In re Bridge Constr. Services of Florida, Inc.,
    2016 WL 4625687 (S.D.N.Y. Sept. 6, 2016).........................................................17

Clinton v. Jones,
    520 U.S. 681 (1997)........................................................................23

Cnty. of Suffolk v. Long Island Lighting Co.,
    728 F.2d 52 (2d Cir. 1984)........................................................................20

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

Colavito v. New York Organ Donor Network, Inc.,
8 N.Y.3d 43 (2006) ................................................................................21

Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.a.r.l.,
996 N.Y.S.2d 476 (Sup. Ct. N.Y. Cty. 2014), rearg. denied, 2015 WL 498875
(Sup. Ct. N.Y. Cty. Feb. 5, 2015) .........................................................23

Cuellar v. City of New York,
32 N.Y.S.3d 292 (2d Dep't 2016) ..........................................................12

Diversified Grp., Inc. v. Daugerdas,
304 F.Supp.2d 507 (S.D.N.Y. 2003) ......................................................23

Elexco Land Servs., Inc. v. Hennig,
2011 WL 9368970 (W.D.N.Y. Dec. 28, 2011) .......................................13

Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.,
838 F.2d 66 (2d Cir. 1988) ...........................................................5, 22, 23

Finn v. Barney,
2008 WL 5215699 (S.D.N.Y. Dec. 8, 2008) ..........................................24

Fixed Income Shares: S Series M v. Citibank N.A.,
130 F.Supp.3d 842 (S.D.N.Y. 2015) ......................................................20

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,
528 U.S. 167 (2000) ................................................................................9

Hausler v. JP Morgan Chase Bank, N.A.,
127 F.Supp.3d 17 (S.D.N.Y. 2015) .........................................................7

Homeward Residential, Inc. v. Sand Canyon Corp.,
298 F.R.D. 116 (S.D.N.Y. 2014) ...........................................................17

Intellivision v. Microsoft Corp.,
484 F. App'x 616 (2d Cir. 2012) .............................................................7

Kappel v. Comfort,
914 F.Supp. 1056 (S.D.N.Y. 1996) ........................................................23

Karmilowicz v. Hartford Fin. Servs. Grp., Inc.,
2012 WL 3734449 (2d Cir. 2012) ..........................................................20

Levy v. Young Adult Inst., Inc.,
2015 WL 5333536 (S.D.N.Y. Sept. 14, 2015) .......................................17

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

Lewis v. Casey,
    518 U.S. 343 (1996) ................................................................................................7

Log On America, Inc. v. Promethean Asset Management L.L.C.,
    223 F.Supp.2d 435 (S.D.N.Y. 2001) ......................................................................9

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992) .............................................................................................6, 8

Makarova v. United States,
    201 F.3d 110 (2d Cir. 2000) ...................................................................................7

Meckel v. Cont'l Res. Co.,
    758 F.2d 811 (2d Cir. 1985) ...................................................................................5

Meyerson v. Tullman,
    721 N.Y.S.2d 517 (1st Dep't 2001) ......................................................................15

Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.,
    418 F.3d 168 (2d Cir. 2005) .................................................................................16

Millennium Ptrs., L.P. v. U.S. Bank Nat'l Ass'n,
    2013 WL 1655990 (S.D.N.Y. April 17, 2013) .....................................................20

In re Musicland Holding Corp.,
    386 B.R. 428 (S.D.N.Y. 2008) .............................................................................20

Nakahata v. New York–Presbyterian Healthcare System, Inc.,
    2011 WL 321186 (S.D.N.Y. Jan. 28, 2011), aff'd, 723 F.3d 192 (2d. Cir.
    2013) ......................................................................................................................22

New York Univ. v. Continental Ins. Co.,
    87 N.Y.2d 308 (1995) ...........................................................................................22

In re Old Carco LLC,
    509 F. App'x 77 (2d Cir. 2013) ............................................................................18

Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n,
    2016 WL 1169515 (S.D.N.Y. Mar. 22, 2016) .....................................................20

Rajamin v. Deutsche Bank Nat'l Trust Co.,
    757 F.3d 79 (2d Cir. 2014) ..................................................................................7, 8

In re Refco Inc., Sec. Litig.,
    2009 WL 10666099 (S.D.N.Y. Nov. 20, 2009) ...................................................16

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

In re Refco Sec. Litig.,
  890 F.Supp.2d 332 (S.D.N.Y. 2012).........................................................17

Rolls-Royce Motor Cars, Inc. v. Schudroff,
  929 F.Supp.117 (S.D.N.Y. 1996) ...........................................................20

Tokio Marine & Nichido Fire Ins. Co. v. Calabrese,
  2013 WL 752259 (E.D.N.Y. Feb. 26, 2013)............................................13

Transportation Ins. Co. v. AARK Const. Grp., Ltd.,
  526 F.Supp.2d 350 (E.D.N.Y. 2007) .......................................................14

VNB Realty, Inc. v. U.S. Bank Nat'l Ass'n,
  2016 WL 3912028 (D.N.J. July 19, 2016)................................................15

W. & So. Life Ins. Co. v. Bank of N.Y. Mellon,
  No. A1302490, 2017 WL 3392855 (Ohio Ct. Common Pleas Aug. 4, 2017)..........................8

Wilde v. Wilde,
  576 F.Supp.2d 595 (S.D.N.Y. 2008).........................................................22

Wolf v. Nat'l Council of Young Israel,
  694 N.Y.S. 2d 424 (2d Dep't 1999)..........................................................20

Zion v. Kurtz,
  50 N.Y.2d 92 (1980) ..............................................................................13

**Statutes and Rules**

FRCP 12(b)(1) ...........................................................................................1, 7

FRCP 12(b)(6) ...........................................................................................1, 5

FRCP 72.........................................................................................................4

## PRELIMINARY STATEMENT

Defendant Deutsche Bank National Trust Company, as trustee (the "Trustee"), submits this memorandum of law in support of its motion, pursuant to FRCP 12(b)(1) and 12(b)(6), to dismiss the complaint of plaintiff Royal Park Investments SA/NV ("RPI"), Dkt.# 1.[1]

This putative class action is brought against the Trustee by RPI as the alleged assignee of certificates in ten different RMBS trusts (the "Covered Trusts").[2]  The June 2014 lawsuit by RPI against the Trustee (RPI/DBNTC I) concerned the same Covered Trusts.  In that action, RPI filed a motion that sought, inter alia, a judicial determination that the Trustee was not entitled to indemnification for its legal fees and expenses from the Covered Trusts in defending that action. The Court denied RPI's motion.  RPI/DBNTC I, Dkt.## 355 & 359.

In this case (RPI/DBNTC II), RPI asserts claims for breach of contract (Count I), unjust enrichment (Count II), conversion (Count III), breach of trust (Count IV), equitable accounting (Count V), and declaratory judgment (Count VI).  Although RPI asserts several non-contractual claims, RPI's theory of liability boils down to the flawed interpretation that the PSAs do not provide the Trustee with a contractual right to indemnification from the Covered Trusts for the Trustee's legal fees and expenses incurred in defending against RPI/DBNTC I.  RPI is wrong. The broad indemnification provisions in the PSAs unambiguously provide for this right.  Indeed, the PSAs provide that the Trustee shall be entitled to indemnification for: "**any** loss, liability, or expense (including reasonable attorneys' fees) incurred in connection with **any claim or legal**

---

[1]  RPI previously sued the Trustee.  See Royal Park Investments SA/NV v. Deutsche Bank Nat'l Trust Co., No. 14-cv-4394-AJN (S.D.N.Y.) ("RPI/DBNTC I").  The instant action is referred to herein as "RPI/DBNTC II."

[2]  The Covered Trusts were created and are governed by Pooling and Servicing Agreements (or a functional equivalent), referred to herein as "PSAs" (which RPI refers to as "Governing Agreements").  RPI attached the PSA for one of the Covered Trusts, the FFML 2006-FF9, as Exh. A to the Complaint herein (the "FF9 PSA"), and alleges that all of the PSAs for the Covered Trusts are "substantially similar."  RPI/DBNTC II, Comp., ¶ 20.  The Complaint's allegations, to the extent not contradicted by the PSAs, are taken as true for purposes of this motion. All emphasis herein is added, and all quotations and citations are omitted.

**action relating to**: (i) **this Agreement**, (ii) **the Certificates**, or (iii) **the performance of any of the Trustee's duties under this Agreement**." <u>See</u>, <u>e.g.</u>, FF9 PSA, § 8.05.  The claims in <u>RPI/DBNTC I</u> fall within this scope.  For that simple reason, all of RPI's claims fail.  The Complaint should be dismissed in its entirety with prejudice for multiple reasons.

**First**, RPI lacks Article III standing to bring the claims herein against the Trustee.  RPI has suffered no injury in fact.  By RPI's own judicial admissions, the certificates issued by the Covered Trusts that RPI allegedly holds (the "Certificates") were wiped out and written down to zero in <u>2012</u>.  <u>See</u>, <u>e.g.</u>, <u>RPI/DBNTC I</u>, Dkt.# 1, Comp., ¶ 31 ("each of the foregoing RMBS are now total losses, having been completely written down to the point that they are worthless").  This occurred before <u>RPI/DBNTC I</u> was even commenced and before the Trustee became contractually entitled to be indemnified for its legal fees and expenses from the Covered Trusts for defending that action.  Because RPI's Certificates were wiped out before the Trustee was entitled to indemnification, none of the monies used to indemnify the Trustee could have flowed through the "waterfalls" of the Covered Trusts to RPI.  Thus, RPI has not been and will not be injured by the Trustee's indemnification.  And, RPI cannot establish standing by relying upon allegations of harm to other investors that may be within a putative class.  Before any class is certified, RPI must establish its own standing.  Finally, RPI cannot establish standing (or any entitlement to declaratory relief) by relying upon the hypothetical possibility of a future recovery in <u>RPI/DBNTC I</u> because the alleged harm is purely speculative.

**Second**, RPI's breach of contract claim should be dismissed for several additional reasons, including because:

- the monies that go toward the indemnification that RPI attempts to challenge never "belonged" to investors (even if RPI is still considered one), much less to RPI.  Rather, distributions to investors are made only from available funds remaining after payment of all trust expenses, which include the Trustee's indemnification of legal fees and expenses;

- RPI misinterprets the PSAs as excluding indemnification for the Trustee in defending against claims in which a plaintiff mentions "negligence" or "willful misconduct" merely in passing.  Rather, the exclusion that RPI relies upon applies only after an adjudication on the merits that the Trustee acted as such;

- the rule that RPI relies upon for the proposition that an indemnification must be unequivocal only applies in the case of first-party indemnifications, i.e., indemnifications between adversaries to a litigation.  Here, the Trustee's indemnification is unequivocal and is provided from the Covered Trusts, not RPI; and

- RPI has not adequately pled facts supporting its conclusory claim that the Trustee has incurred unreasonable legal fees and expenses by engaging in unreasonable litigation tactics, and thus fails to satisfy the pleading standards of FRCP 8(a)(2).

**Third**, all of RPI's non-contractual claims should be dismissed because, among other reasons, they are premised upon the erroneous assumption that the Trustee is not contractually entitled to indemnification, they are duplicative of RPI's breach of contract claim, and they are barred by the economic loss doctrine because RPI alleges only economic harm.  Moreover, these non-contractual claims should also be dismissed for several other, independent reasons.

**Alternatively**, if the Court is not inclined to dismiss the Complaint, the Court should stay this case pending the resolution of RPI/DBNTC I to avoid the unnecessary expenditure of time and resources that would occur here if the Trustee either prevails in RPI/DBNTC I, or there is an adjudication in that case that the Trustee did **not** act with gross negligence or engage in willful misconduct.

## RELEVANT BACKGROUND OF *RPI/DBNTC I*

The Court's familiarity with the allegations in RPI/DBNTC I, and the procedural history therein, is assumed.  Briefly, there, RPI alleged that the Trustee breached its obligations under the PSAs for the Covered Trusts, and failed to adequately perform its duties under those PSAs.  Id., Dkt.# 1.  After the Trustee moved to dismiss the complaint therein,[3] the Court granted in part

---

[3]     RPI incorporates by reference its complaint in RPI/DBNTC I.  RPI/DBNTC II, Comp. ¶ 9.  Likewise, the Trustee incorporates by reference its motion to dismiss (RPI/DBNTC I, Dkt.# 55 (the "RPI/DBNTC I MTD")) and
(Continued note)

and denied in part that motion.  <u>RPI/DBNTC I</u>, Dkt.# 100.  The Court dismissed RPI's derivative claims and recognized that RPI had withdrawn its losing TIA claim.

RPI later filed a class certification motion, which the Court <u>denied</u>, but permitted RPI to renew so as to propose an "appropriately redefined class."  <u>RPI/DBNTC I</u>, Dkt.# 350.  RPI filed a renewed class certification motion, which the Trustee opposed, and which is now <u>sub judice</u>.

On March 24, 2017, in <u>RPI/DBNTC I</u>, RPI filed a motion to compel the Trustee to produce invoices for all legal fees and expenses for which the Trustee was indemnified by the Covered Trusts relating to the defense of that case, <u>and</u> also moved for an injunction forcing the Trustee to cease such indemnification and to pay monies back to the Covered Trusts. <u>RPI/DBNTC I</u>, Dkt.# 340.  RPI argued that the Trustee is not contractually entitled to indemnification for its legal fees and expenses.  <u>Id.</u>, p. 2.  After a hearing, Magistrate Judge Moses denied that motion.  <u>RPI/DBNTC I</u>, Dkt.## 355 & 359.  Notably, RPI did not object to this ruling to the District Court under FRCP 72.

## OTHER RELEVANT BACKGROUND

In the Summer of 2014, RPI brought a slew of cases against RMBS trustees, including the Trustee.[4]  Now, RPI brings four new lawsuits, including this one, accusing the same RMBS trustees that RPI sued in the earlier cases of improperly using trust monies to reimburse their legal fees and expenses, and of incurring unreasonable legal fees and expenses, in those cases.[5]

---

the related reply.  <u>RPI/DBNTC I</u>, Dkt.# 69 (the "<u>RPI/DBNTC I</u> Reply").  Many of the arguments that the Trustee raised therein apply with equal force to this action.  For example, the "No-Action" clauses in the PSAs operate to bar RPI's breach of contract claim in this case.  <u>RPI/DBNTC I</u> MTD, pp. 37-38; <u>RPI/DBNTC I</u> Reply, p. 17.

[4]      <u>See</u>, <u>e.g.</u>, <u>RPI/DBNTC I</u>; <u>Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n</u>, No. 14-cv-2590 (S.D.N.Y.); <u>Royal Park Investments SA/NV v. HSBC Bank USA Nat'l Ass'n</u>, No. 14-cv-8175 (S.D.N.Y.) ("<u>RPI/HSBC I</u>"); <u>Royal Park Investments SA/NV v. Wells Fargo Bank, N.A.</u>, No. 14-cv-9764 (S.D.N.Y.) ("<u>RPI/WF I</u>").

[5]      <u>Royal Park Investments SA/NV v. Wells Fargo Bank, N.A.</u>, No. 17-cv-6687 (S.D.N.Y.) ("<u>RPI/WF II</u>"); <u>Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n</u>, No. 17-cv-6778 (S.D.N.Y.) ("<u>RPI/USB II</u>"); <u>Royal Park Investments SA/NV v. HSBC Bank USA, Nat'l Ass'n</u>, No. 17-cv-7684 (S.D.N.Y.) ("<u>RPI/HSBC II</u>").

## THE PSAs

The Trustee's duties are limited to those expressly set forth in the PSAs.  See RPI/DBNTC I, Dkt.# 100, p. 18 ("[i]t is well-established under New York common law that the duties of an indenture trustee are strictly defined and limited to the terms of the indenture").  RPI agrees.  RPI/DBNTC II, Comp., ¶ 20 ("The obligations, duties and rights of [the Trustee] for the Covered Trusts are expressly delineated in the [PSAs].").  Thus, the Trustee does not have any fiduciary duty to investors in the Covered Trusts; an RMBS trustee's duties are defined by the terms of the indenture agreement, not by a fiduciary relationship as would be the case for an ordinary trustee.  See Meckel v. Cont'l Res. Co., 758 F.2d 811, 816 (2d Cir. 1985); see also Elliott Assocs. v. J. Henry Schroder Bank & Trust Co., 838 F.2d 66, 71 (2d Cir. 1988).

## ARGUMENT

In Ashcroft v. Iqbal, 556 U.S. 663 (2009), the Supreme Court directed district courts to follow a two-step approach when evaluating a FRCP 12(b)(6) motion:  (1) "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth;" and (2) if "there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief."  Id., at 679.

## I.    ALL OF RPI'S CLAIMS SHOULD BE DISMISSED FOR LACK OF STANDING

RPI lacks Article III standing to bring all of the claims herein against the Trustee because RPI cannot allege that it has suffered an injury in fact, and because any theory of damages RPI may attempt to assert is purely hypothetical and speculative.

### A.    RPI Lacks Standing Because It Fails To Allege An Injury In Fact And Cannot Do So Because, By RPI's Own Admission, All The Certificates That RPI Alleges It Holds Were Wiped Out Long Before Any Indemnification

RPI lacks Article III standing to bring the claims herein against the Trustee because RPI has suffered no injury in fact.  By RPI's own judicial admissions, the Certificates that RPI

alleges it holds were wiped out and written down to zero in 2012 and, at that point, became "worthless."  This occurred before RPI/DBNTC I was commenced and before the Trustee became contractually entitled to be indemnified for its legal fees and expenses from the Covered Trusts for defending that action.  Because RPI's Certificates were "wiped out" before the Trustee was entitled to indemnification, **none** of the monies used to indemnify the Trustee would have flowed **through** the "waterfall" provisions of the Covered Trusts **to** RPI in any event.[6]  Thus, RPI has not been and will not be injured by the Trustee's indemnification, and thus has no injury in fact.

In order to establish Article III standing, it is RPI's burden to demonstrate that:  (1) it has suffered "an injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical;" (2) the injury is "fairly traceable to the challenged conduct of the defendant;" and (3) the injury can be redressed by a favorable decision of the court.  Lujan v.

---

[6]      Each PSA contains "waterfall" provisions governing:  (a) the sequence in which the monies paid on the underlying mortgage loans (which form the collateral for the RMBS) flow through the Covered Trusts (the "Mortgage Cash Flows"); and (b) the sequence in which losses on the collateral are allocated among certificateholders.  Before monies are distributed to certificateholders, reductions are made for amounts as to which the servicer, the depositor, the master servicer, the securities administrator, and the Trustee are entitled to be paid or reimbursed pursuant to the PSA, including the Trustee's indemnification for legal fees and expenses.  FF9 PSA, Art. I, "Definitions," for "Available Funds" (pp. 14-15); id., § 8.05.  Thus, as explained in Sec. II.A.2. infra, these waterfall provisions provide that the Trustee is reimbursed its legal fees and expenses before any funds are "available" for distribution to certificateholders.  After those reductions, the remaining Mortgage Cash Flows are distributed among the different tranches of the RMBS in the Covered Trusts according to the waterfall.  Generally speaking, senior tranches have priority over junior tranches to receive funds available for distribution, and junior tranches bear losses before senior tranches.  See, e.g., FF9 PSA, §§ 4.02(a) & 4.05.  As to losses, when the servicer determines that no further recovery is anticipated on a liquidated loan and therefore writes off the loan's balance, that loss is allocated to a tranche and that tranche's principal balance due is reduced by the amount of that loss.  Id., § 4.05, & Art. I, "Definitions," for "Applied Realized Loss Amount" (p. 14), "Class Certificate Balance" (p. 18), "Final Recovery Determination" (p. 27), "Liquidated Mortgage Loan" (p. 32), and "Realized Loss" (pp. 41-42).  A tranche is "wiped out" when its principal balance has been reduced to zero, after which time certificateholders of that tranche are no longer entitled to receive further distributions of principal or interest.  Id., §§ 4.02(a) & 4.05.  Thus, once a tranche is "wiped out," those certificateholders will be unaffected by subsequent indemnification payments to the Trustee that reduce funds available for distribution, because those certificateholders will not be receiving any further distributions.  Indeed, in RPI's reply in support of its motion for a judicial determination that the Trustee was not entitled to indemnification in defending RPI/DBNTC I, RPI acknowledged that "the certificates that RPI holds in the Covered Trusts have not made interest or principal payments for some period of time." RPI/DBNTC I, Dkt.# 343, p. 1

6

<u>Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992); <u>see also</u> <u>Rajamin v. Deutsche Bank Nat'l Trust</u>

<u>Co.</u>, 757 F.3d 79, 85-86 (2d Cir. 2014).  The Certificates RPI allegedly owns were wiped out by

2012, before the <u>RPI/DBNTC I</u> case even began in 2014.  Indeed, in the <u>RPI/DBNTC I</u> June

2014 Complaint, RPI alleged that the RMBS at issue were "now total losses, having been

completely written down to the point that they are worthless."  <u>RPI/DBNTC I</u>, Comp., ¶ 31.

And, in June 5, 2017 motion papers to the Court in <u>RPI/DBNTC I</u>, RPI judicially admitted that:

> Here, all of Certificates had defaulted and been written down to zero by July
> 2012.  As the Certificates had defaulted by July 2012, there could not (and was
> not) any attempt by RPI to hedge losses on the Certificates.  Obviously, an
> investor cannot hedge losses on a defaulted RMBS – this would be the equivalent
> of buying fire insurance on a house that has already burned to the ground.

<u>RPI/DBNTC I</u>, Dkt.# 388, pp. 1-2.[7]  Thus, no trust monies used for the Trustee's indemnification

of legal fees and expenses in <u>RPI/DBNTC I</u> would have flowed to RPI through the Covered

Trusts' waterfalls, and, accordingly, RPI has not been damaged by any indemnification of the

Trustee from the Covered Trusts.[8]

### B.    RPI Cannot Rely Upon Some Hypothetical Future Injury Based Upon The Possibility Of A Recovery In *RPI/DBNTC I* To Establish Standing

Any attempt by RPI to establish standing by reliance upon the possibility of a

hypothetical future recovery in <u>RPI/DBNTC I</u> fails because that alleged harm is purely

hypothetical.  To establish Article III standing, a plaintiff must demonstrate that its alleged injury

---

[7]     RPI's assertions in <u>RPI/DBNTC I</u> are judicial admissions, and RPI is judicially estopped from taking an inconsistent position.  <u>Intellivision v. Microsoft Corp.</u>, 484 F. App'x 616, 618-21 (2d Cir. 2012); <u>Hausler v. JP Morgan Chase Bank, N.A.</u>, 127 F.Supp.3d 17, 34-38 (S.D.N.Y. 2015); <u>see also</u> <u>RPI/DBNTC I</u>, Dkt.# 381, at 93:6-13, 97:20-98:7 (basing decision upon RPI's assertion that RMBS at issue were "written down to zero").  This Court may also consider these facts under FRCP 12(b)(1).  <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000).

[8]     The fact that RPI purports to assert claims on behalf of a putative class does not cure RPI's lack of standing.  Before any class is certified (and RPI's first class certification motion has already been denied), RPI must establish its own standing.  A class action "adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  <u>Lewis v. Casey</u>, 518 U.S. 343, 357 (1996); <u>see also</u> <u>Angel Music, Inc. v. ABC Sports, Inc.</u>, 112 F.R.D. 70, 73 (S.D.N.Y. 1986).

is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical."

Lujan, 504 U.S. at 560-61.[9]  RPI is likely to argue that, even though the Certificates that RPI

allegedly holds were wiped out in 2012, it may recover funds from RPI/DBNTC I, and, if it does,

the indemnification of the Trustee's legal fees and expenses will lessen the possibility of RPI

receiving any recovery.  See RPI/DBNTC I, Dkt.# 343, p. 1 ("RPI has the right to collect any

payments from recoveries that are made in the future.").  Far from being concrete, particularized,

and actual or imminent, that injury is hypothetical and too remote to create Article III standing.

Such a recovery is mere conjecture in at least four respects:  (i) it is speculative that there will be

any recovery in RPI/DBNTC I; (ii) even if there is such a recovery, it is speculative that the

Trustee will be found to have acted negligently or engaged in willful misconduct;[10] (iii) even if

there is such a recovery, it is speculative that any recovery would flow through the waterfalls of

the Covered Trusts and reach the (lower) tranches of the Certificates that RPI alleges it holds;

and (iv) even if a recovery would flow through to the tranches of the Certificates that RPI alleges

it holds, it is speculative that the Trustee's indemnification would affect the amount of any

recovery that flowed through to RPI.  Notably, in the only case brought by an RMBS investor

against an RMBS trustee to go to trial thus far, there was a complete defense verdict in favor of

the trustee.  W. & So. Life Ins. Co. v. Bank of N.Y. Mellon, No. A1302490, 2017 WL 3392855

(Ohio Ct. Common Pleas Aug. 4, 2017).  Thus, RPI's prospects of prevailing in RPI/DBNTC I

are speculative, **at best**.

---

[9]      See also Rajamin, 757 F.3d at 85-86 (affirming dismissal of the plaintiffs' claims on standing grounds
because "the record in this case reveals that [the plaintiffs' complaint] alleged only injuries that were hypothetical";
"it is difficult to view [the plaintiffs' alleged harm] as other than conjectural or hypothetical").

[10]     Because the Trustee is entitled to indemnification unless it is adjudicated that the Trustee acted negligently
or engaged in willful misconduct, there is the possibility that RPI could prevail in RPI/DBNTC I, and yet the Trustee
would still be entitled to indemnification if it is not found to have acted negligently or engaged in willful
misconduct.

C. **For The Same Reasons,
RPI Cannot Demonstrate A Ripe, Justiciable Controversy**

RPI has failed to establish (as it must) that there exists a ripe, justiciable controversy.

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180-81 (2000) (injury must be

actual or imminent, not conjectural or hypothetical).  This applies to all of RPI's claims,

including its declaratory judgment claim.  Essentially, RPI is asking the Court to determine what

the legal rights and obligations of the parties would be in the face of contingencies that are not

likely to occur.  The Court is without jurisdiction to issue a declaration touching upon such a

hypothetical situation.  See Associated Indem. v. Fairchild Indus., 961 F.2d 32, 35 (2d Cir.

1992).  This dooms RPI's declaratory judgment claim.  Log On America, Inc. v. Promethean

Asset Management L.L.C., 223 F.Supp.2d 435, 452 (S.D.N.Y. 2001) ("In short, a controversy is

justiciable under the [Declaratory Judgment] Act only if it presents the plaintiff with a present

danger or dilemma, and not a danger or dilemma which is contingent upon the happening of

certain future or hypothetical events.").  Indeed, RPI seeks a determination of what its rights

would be only if the following hypothetical events come to fruition:  (i) RPI prevails in

RPI/DBNTC I, such that there is a recovery; (ii) the Trustee is also found to have acted

negligently or engaged in willful misconduct; (iii) the recovery flows through the waterfalls of

the Covered Trusts and reaches the (lower) tranches of the Certificates that RPI alleges it holds;

and (iv) the Trustee's indemnification affects the amount of any recovery that flowed through to

RPI.  Because this is conjectural, there is not a ripe, justiciable controversy.

II. **RPI'S BREACH OF CONTRACT CLAIM
AND DECLARATORY JUDGMENT CLAIM SHOULD BE DISMISSED**

RPI's breach of contract claim, declaratory judgment claim, and indeed all of RPI's

claims, should be dismissed because the Trustee is contractually entitled to the indemnification

that RPI asserts is unlawful.  Thus, the Trustee has not breached the PSAs.[11]

      **A.**      **The Plain Language Of The PSAs Forecloses**
               **<u>RPI's Breach Of Contract And Declaratory Judgment Claims</u>**

           **1.**      **The Trustee's Indemnification For Its**
                      **Legal Fees And Expenses Incurred In**
                      **<u>Defending Itself Is Lawful And Provided For Under The PSAs</u>**

RPI's contract and declaratory judgment claims should be dismissed because the PSAs provide the Trustee with a <u>contractual</u> right to indemnification.  The Trustee bargained for the right to be indemnified for: "any loss, liability, or expense (including reasonable attorneys' fees) incurred in connection with any claim or legal action relating to: (i) this [PSA], (ii) the Certificates, or (iii) the performance of any of the Trustee's duties under this Agreement."  FF9 PSA, § 8.05.  Further, the PSAs provide that "the Trustee shall not be required to risk or expend its own funds or otherwise incur any financial liability in the performance of any of its duties." <u>Id.</u>, § 8.02(f).[12]  The claims that RPI asserts in <u>RPI/DBNTC I</u> <u>all</u> relate to the PSAs, RPI's Certificates, <u>and</u> the Trustee's performance of its duties under the PSAs.[13]

Moreover, courts in this District have confirmed RMBS trustees' right to indemnification

---

[11]      RPI's declaratory judgment claim is based upon the same theories and allegations as RPI's contract claim, such as indemnification of first-party claims, the Trustee's negligence and willful misconduct, the unreasonableness of the fees and expenses, and the advancement of the fees and expenses.  <u>RPI/DBNTC II</u>, Comp., ¶ 74(a)-(d).

[12]      In the Trustee's September 2014 motion to dismiss in <u>RPI/DBNTC I</u>, it made RPI aware that the Trustee is properly indemnified for all legal fees and expenses.  In demonstrating why an RMBS trustee is not obligated to investigate potential breaches absent direction and indemnification, the Trustee stated that "investigations can be expensive, and the only funds available to finance such an investigation are trust assets in which the Indenture Trustee has no beneficial interest."  <u>RPI/DBNTC I</u>, Dkt.# 31, p. 9.  The Trustee further demonstrated that "[t]he requirement that Certificateholders offer the Indenture Trustee indemnity as a prerequisite to directing any investigation is critical to the economics of the transaction and protects the Indenture Trustee, which is not required to spend its own funds."  <u>Id.</u>, pp. 9-10.  In support of that point, the Trustee stated that "[t]he PSAs provide that 'the Trustee shall not be required to risk or expend its own funds or otherwise incur any financial liability in the performance of any of its duties.'"  <u>Id.</u>, p. 10 n. 10.

[13]      <u>See</u>, <u>e.g.</u>, <u>RPI/DBNTC I</u>, Comp., ¶¶ 171; 208; 212 ("As a result of [the Trustee's] multiple <u>breaches of the [PSAs]</u> alleged herein, [the Trustee] is liable to plaintiff, the class and the Covered Trusts for the damages they suffered as a direct result of [the Trustee's] <u>failure to perform its contractual obligations under the Governing Agreements</u>.").  RPI admits that <u>RPI/DBNTC I</u> relates to the PSAs and the Trustee's performance thereunder by affirmatively alleging that the Trustee's "legal expenses related to defending itself in [<u>RPI/DBNTC I</u>] <u>against allegations that it breached its **contractual** … duties</u> owed to investors are currently being paid by funds out of the Covered Trusts' assets."  <u>RPI/DBNTC II</u>, Comp., ¶ 2.

in nearly identical cases.  In <u>RPI/HSBC I</u>, the court found that the "governing agreements vest in HSBC a right of indemnification for legal fees." <u>RPI/HSBC I</u>, Dkt.# 254, p. 8.[14]  And, in <u>RPI/WF I</u>, the court rejected RPI's argument that an exception to attorney-client privilege should exist because the trusts were paying the defendant trustee's legal fees, reasoning that: "[t]he fact that Wells Fargo's legal fees were paid by the trusts does not cut in favor of applying the fiduciary exception [to attorney-client privilege] **because the governing agreements vested in Wells Fargo a right of indemnification for legal fees**." <u>RPI/WF I</u>, 2017 WL 953514, *6 (S.D.N.Y. Mar. 9, 2017).  The Trustee unequivocally is entitled to indemnification for its legal fees and expenses in defending against <u>RPI/DBNTC I</u>.

### 2. Funds That Flow Through The Covered Trusts And Are Used To Indemnify The Trustee Do Not "Belong" To Certificateholders

RPI's contract and declaratory judgment claims should be dismissed because they rely upon RPI's mischaracterization of funds that flow through the Covered Trusts to indemnify the Trustee as "belonging" to investors.  RPI's characterization of the Trustee "being paid … out of the Covered Trusts' assets that belong to the investors in those trusts" is incorrect. <u>RPI/DBNTC II</u>, Comp., ¶ 2.  Rather, the PSAs repeatedly condition the Trustee's duty to act upon a guarantee of indemnity from the Covered Trusts.  The waterfall provisions of the PSAs ensure that the Trustee is reimbursed its legal fees and expenses <u>before</u> any funds are distributed to certificateholders.  Certificateholders are only entitled to distributions "to the extent of Available Funds."  FF9 PSA, § 4.02(a).  "Available Funds" is expressly defined to be funds <u>net of amounts payable to the Trustee</u>.  Specifically, "Available Funds" are to be "reduced by amounts" as to

---

[14]     RPI has judicially admitted that "[t]he plaintiffs in <u>RPI v. HSBC</u> asserted, as RPI asserts here, claims for breach of contract and breach of trust based on facts similar to those before this Court [in <u>RPI/DBNTC I</u>]." <u>RPI/DBNTC I</u>, Dkt. # 73.

which various parties, including the Trustee, "are entitled to be paid or reimbursed." Id., Art. I,
"Definitions," pp. 14-15 (definition of "Available Funds").

In essence, trust expenses, including the Trustee's legal fees and expenses, are the first
payments in the payment waterfalls established by the PSAs.  Just as senior certificateholders are
not paid with funds that "belong" to junior certificateholders, trust expenses are not paid with
funds that "belong" to any certificateholders.  Oddly, RPI acknowledges herein that "before the
certificateholders receive their monthly remittances, the trustee (and certain other deal parties) to
the [PSAs] may withdraw funds from the Covered Trusts' assets to pay for their costs
administering the trust or servicing the loans." RPI/DBNTC II, Comp., ¶ 18; see also id., ¶ 23.

RPI also wrongly alleges that the Trustee is impermissibly "advancing" legal fees and
expenses to itself. RPI/DBNTC II, Comp., ¶ 30.  The Trustee is not "advancing" its legal fees
and expenses but seeking reimbursement (on an ongoing basis) for legal fees and expenses that
the Trustee has already actually incurred.  The PSAs expressly contemplate that the Trustee will
be regularly reimbursed for its expenses as "amounts due" from trust funds.  Under New York
law, the "duty to indemnify [a party] for attorneys' fees and costs [i]s triggered when claims
[a]re presented." Cuellar v. City of New York, 32 N.Y.S.3d 292, 294 (2d Dep't 2016).[15]  By the
PSAs' terms, the Covered Trusts must reimburse the Trustee "for expenses incurred by or
reimbursable to … the Trustee, as the case may be, pursuant to … Section 8.05." FF9 PSA, §
3.11.  Consistent with this entitlement, the Trustee has properly sought reimbursement for legal
fees and expenses that it has already actually incurred.  See Cuellar, 32 N.Y.S.3d at 294.  No
principle of New York law and no PSA provision requires the Trustee to wait until all of its legal

---

[15]     See also Barnes v. New York City Hous. Auth., 841 N.Y.S.2d 379, 382 (2d Dep't 2007) (holding that
liability finding "is not necessary to trigger the subject indemnification clause," because it was "triggered when
claims were presented alleging that [defendant's conduct] was a cause of the underlying fire and injuries").

fees and expenses are incurred and then seek a single reimbursement for the total amount.

> **3.     RPI's Claim That The Trustee Is Excluded
> From Indemnification Due To RPI's Gratuitous
> And Passing References to Gross Negligence And Willful
> <u>Misconduct Relies Upon A Flawed Interpretation Of The PSAs</u>**

RPI alleges that the Trustee is not entitled to indemnification merely because RPI <u>alleges</u> that the Trustee acted with "gross negligence and willful misconduct" and the PSAs exempt from indemnification legal fees and expenses incurred in defending against such claims.  <u>RPI/DBNTC</u> <u>II</u>, Comp., ¶ 25 (citing <u>RPI/DBNTC I</u>, Dkt.# 1, ¶ 199).  RPI's contract and declaratory judgment claims should be dismissed because they rely upon this flawed assumption that the Trustee is not entitled to indemnification merely because the complaint in <u>RPI/DBNTC I</u> makes gratuitous, passing references to "gross negligence" and "willful misconduct."

The Trustee's contractual entitlement to indemnification, understood in the context of the PSAs' constituent parts operating as one, includes the Trustee's legal fees and expenses in <u>RPI/DBNTC I</u>.  The PSAs grant the Trustee the right to indemnification for legal fees and expenses incurred in connection with "**<u>any</u>** claim or legal action."[16]  Also, in contrast to typical attorney fee provisions, the PSAs do not limit the Trustee's entitlement to indemnification to legal fees and expenses incurred in connection with any "claim" or "legal action" as to which Trustee prevails.  In other words, by the negotiated terms of the PSAs, the Trustee need not "win" in order to be entitled to indemnification.  Indeed, the parties to the PSAs could have agreed to language that would limit the Trustee's indemnification to legal fees and expenses incurred in connection with any **<u>false</u>** claim or **<u>favorable</u> <u>judgment</u>**, but, they did not.

---

[16]     As the New York Court of Appeals has recognized, "the word 'any' means 'all' or 'every' and imports no limitation."  <u>Zion v. Kurtz</u>, 50 N.Y.2d 92, 104 (1980); <u>see also</u> <u>Elexco Land Servs., Inc. v. Hennig</u>, 2011 WL 9368970, *3 (W.D.N.Y. Dec. 28, 2011) (citing <u>Zion</u>).  As the term "any" provides no limitation, courts have repeatedly interpreted the term "any" claim in indemnification provisions to mean "all" claims, including claims involving the indemnitee's own negligence.  <u>Tokio Marine & Nichido Fire Ins. Co. v. Calabrese</u>, 2013 WL 752259, *7 (E.D.N.Y. Feb. 26, 2013) (citing <u>Bradley v. Earl B. Feiden, Inc.</u>, 8 N.Y.3d 265, 275 (2007)).

Finally, the PSAs exclude from the Trustee's indemnification rights only "loss, liability, or expense … **incurred because of** willful misconduct, bad faith, or negligence in the performance of any of the Trustee's duties."  FF9 PSA, § 8.03.  Critically, prior to an adjudication on the merits, no legal fee or expense can be said to have been "<u>incurred because of</u>" the Trustee's willful misconduct or negligence.  RPI's interpretation (that the Trustee is not indemnified for defending itself against <u>mere allegations</u> of willful misconduct or negligence) would vitiate the PSAs' indemnification provisions.  Were the law otherwise, no RMBS trustee would ever receive the benefit of contractual indemnification, because claimants would simply make conclusory assertions of willful misconduct or negligence to destroy a trustee's indemnification.  Thus, if RPI intends to invoke this exception to contest indemnity, it must wait until there is an adjudication on the merits in <u>RPI/DBNTC I</u> that the Trustee engaged in willful misconduct or gross negligence.  Thus, the PSAs provide that the Trustee is entitled to indemnification for legal fees and expenses in connection with all claims and legal actions, including those alleging willful misconduct and negligence, <u>unless and until</u> the Trustee is adjudicated to have acted as such.

Also, the references to "gross negligence and willful misconduct" in the <u>RPI/DBNTC I</u> Complaint are gratuitous and made in passing.  The <u>RPI/DBNTC I</u> Complaint does not contain a corresponding cause of action supported by factual allegations.[17]  At best, they are "naked assertions" lacking any "factual enhancement."  <u>Iqbal</u>, 556 U.S. at 678.  RPI's choice to insert such words in the <u>RPI/DBNTC I</u> Complaint does not preclude the Trustee's right to indemnification.[18]  Such references are "unsubstantiated allegations" that are "insufficient to bar

---

[17]     The Trustee does not concede, and specifically disputes, that it would not be entitled to indemnification if RPI did assert a cause of action for willful misconduct or negligence.

[18]     <u>See</u> <u>Transportation Ins. Co. v. AARK Const. Grp., Ltd.</u>, 526 F.Supp.2d 350, 357 n. 3 (E.D.N.Y. 2007) ("A
(Continued note)

indemnification." <u>Meyerson v. Tullman</u>, 721 N.Y.S.2d 517, 517 (1st Dep't 2001).[19]

RPI cannot overcome a case that is directly on point.  In <u>VNB Realty, Inc. v. U.S. Bank Nat'l Ass'n</u>, 2016 WL 3912028 (D.N.J. July 19, 2016), an RMBS investor sued an RMBS trustee and then sought an injunction ordering the trustee "to reimburse funds it withdrew from a trust for the purposes of covering legal fees and expenses it has incurred in this action."  <u>Id.</u>, *1.  The investor argued that, because it had asserted a claim for negligence, the trustee was not entitled to indemnification for its legal fees and expenses because the relevant indemnification provision excepted "willful malfeasance, bad faith, or negligence."  <u>Id.</u>  Citing a trust agreement provision nearly identical to the provisions cited by the Trustee, that trustee argued it was entitled to indemnification.  <u>Id.</u>  The court denied the motion.  The court implicitly rejected the investor's argument that mere <u>allegations</u> of negligence precluded indemnification, noting that, at the time of the motion, there was "no final disposition on the merits."  <u>Id.</u>, *3, n. 2.  The court denied the motion because the investor failed to satisfy the injunction standards.  <u>Id.</u>, *2.

### 4. RPI's Other Challenges To The Trustee's Entitlement To Indemnification Fail Because They Rely Upon Inapplicable Rules

RPI makes several other challenges to the Trustee's indemnification, all of which fail because they rely upon rules that are inapplicable given the unequivocal nature of the Trustee's indemnification rights under the PSAs and the relationship between RPI and the Trustee.

**First**, RPI argues that the common law "default rule" under New York law is that party

---

contract default under a construction contract is not transformed into an accident ... by the simple expedient of alleging negligent performance or negligent construction.  Despite the drafting of [the third-party claimant's] complaint as an action sounding in negligence, the claims against [the insured] concern its failure to meet its contractual obligations.").

[19]     <u>See also</u> <u>Berkley Reg'l Ins. Co. v. Weir Bros.</u>, 2013 WL 6020785, *8 (S.D.N.Y. Nov. 6, 2013) (holding indemnity proper where "conclusory allegations of bad faith and unreasonableness" failed to raise a genuine issue of fact as to the impropriety of payments subject to indemnification); <u>Am. Home Assur. Co. v. Gemma Const. Co.</u>, 713 N.Y.S.2d 48, 52 (1st Dep't 2000) (holding indemnity proper where "apart from their conclusory accusations of bad faith and other purported improprieties, there is no evidence that the surety acted improperly").

opponents must pay their own legal fees and expenses.  RPI/DBNTC II, Comp. ¶ 28.  The

"default rule" is inapposite for two reasons.  First, the Trustee's right to indemnification is

contractual and supersedes the default rule.  See Mid-Hudson Catskill Rural Migrant Ministry,

Inc. v. Fine Host Corp., 418 F.3d 168, 177 (2d Cir. 2005); In re Refco Inc., Sec. Litig., 2009 WL

10666099, *14 (S.D.N.Y. Nov. 20, 2009).  Second, the default rule militates against fee shifting

between parties to a litigation.  By contrast, the Trustee's indemnification is from "the Covered

Trusts" (RPI/DBNTC II, Comp. ¶ 25 ), not RPI.  See FF9 PSA, § 8.05 ("The Trustee shall be

entitled to be reimbursed, **from funds on deposit in the Distribution Account**").  Moreover,

courts in this District have confirmed RMBS trustees' right to indemnification.  RPI/HSBC I,

Dkt.# 254, p. 8; RPI/WF I, 2017 WL 953514, *6.  Thus, the default rule is inapplicable.

    **Second**, RPI asserts that the Trustee is not entitled to indemnification because the PSAs

are not unequivocal in providing the indemnification, as indemnifications between parties to

litigation must be.  RPI/DBNTC II, Comp., ¶ 24.  That argument is factually and legally wrong.

Factually, the PSAs are unequivocal with respect to the Trustee's indemnification.  See supra

Sec. II.A.1.  Legally, the rule that RPI cites applies only in the case of first-party

indemnification, i.e., indemnification between adversaries in a litigation.  The Trustee's source

of indemnification is the Covered Trusts, which are not parties to RPI/DBNTC I or this action.

RPI alleges to be only one investor in the Covered Trusts, and, more specifically, one whose

Certificates have been wiped out.[20]

    A court in this District, in deciding whether an indemnification in an RMBS trust

---

[20]      Any suggestion by RPI that it represents the Covered Trusts themselves is wrong.  Indeed, RPI attempted to assert derivative claims on behalf of the Covered Trusts in RPI/DBNTC I, and the Court dismissed those claims, holding that RPI's claims as pled were direct, not derivative.  RPI/DBNTC I, Dkt.# 100, p. 21.  Likewise, any suggestion by RPI that it represents the interests of all investors in the Covered Trusts is wrong.  As established in Section I.A., RPI must first establish its own standing to sue, and it cannot.  Moreover, no class has been certified and RPI's first class certification motion was denied.  RPI/DBNTC I, Dkt.# 350.

agreement was enforceable, found that "an action where the certificate holders sue the Trustee for failing to enforce the repurchase remedy"—the exact scenario presented by RPI/DBNTC I— is an action brought by a third party to the trust agreement. Homeward Residential, Inc. v. Sand Canyon Corp., 298 F.R.D. 116, 132-33 (S.D.N.Y. 2014). Magistrate Judge Moses noted the importance of Homeward Residential in denying RPI's motion for a judicial determination that the Trustee was not entitled to indemnification. RPI/DBNTC I, Dkt.# 359, at 17:18-18:10.

**Finally**, RPI argues that the Trustee's indemnification does not apply to "internecine disputes between or among parties to the PSAs." RPI/DBNTC II, Comp. ¶ 28. RPI is not a party to the PSAs. In fact, RPI has specifically argued to the Court in RPI/DBNTC I that it is **not** a party to the PSAs. RPI/DBNTC I, Dkt.# 192, p. 3. Thus, there is no "inter-party" dispute here. See In re Refco Sec. Litig., 890 F.Supp.2d 332, 351 (S.D.N.Y. 2012). And, in any event, the broad scope of the Trustee's indemnification indicates that it should not be read as limited to third-party claims. Here, "indemnification is not limited to a specific list of items … and cannot be read to be limited solely to the suit by [a] third party." In re Bridge Constr. Services of Florida, Inc., 2016 WL 4625687, *3 (S.D.N.Y. Sept. 6, 2016).[21] By expressly identifying claims relating to "this Agreement," the Trustee's indemnification rights necessarily include disputes between the Trustee and the other parties to the PSAs. Typically, a party to an agreement is the party bringing suit for breach of that agreement. As a result, by extending indemnification to disputes arising from "th[e] Agreement," the PSAs clearly contemplate indemnification when the Trustee is in litigation with a party to the PSAs.[22]

---

[21]     See also Levy v. Young Adult Inst., Inc., 2015 WL 5333536, *5 (S.D.N.Y. Sept. 14, 2015) (finding that the absence of a specific provision for indemnification for cases brought by one party to an employment agreement against the other cannot override a separate, broader express promise to indemnify).

[22]     To the extent RPI argues that public policy precludes indemnity in internecine disputes, courts have rejected that argument. Breed, Abbott & Morgan v. Hulko, 531 N.Y.S.2d 240, 242-43 (1st Dep't 1988), aff'd, 74

(Continued note)

**B.     To The Extent RPI Bases Its Contract And Declaratory Judgment Claims On Allegations That The Trustee's Legal Fees And Expenses Are Unreasonable, RPI Fails To Allege *Facts* To Support Those Claims**

A complaint proffering mere "naked assertions" lacking "factual enhancement," and "labels and conclusions" will not suffice.  Iqbal, 556 U.S. at 678.  A court need not accept as true such allegations.  Id., at 679-80.  For those reasons, RPI's allegations of unreasonableness fail.

RPI alleges the Trustee is not entitled to indemnification for its legal fees and expenses in RPI/DBNTC I because those legal fees and expenses are unreasonable (RPI/DBNTC II, Comp., ¶ 31), because, in turn, the Trustee's tactics in that case have been unreasonable.  Id., Comp., ¶¶ 16, 39(d), 42(c), 46, 55, 63, & 74(c).  Yet, RPI fails to allege any facts to support its claims of such unreasonableness, instead resorting to naked assertions, labels, and conclusions.  RPI references a "scorched earth" defense strategy and "unmeritorious discovery practice" (id., Comp., ¶ 15), including "inappropriately oppressive discovery."  Id., ¶ 16.  However, RPI fails to adequately allege facts supporting the naked assertions that the Trustee's tactics were "unmeritorious," "inappropriately oppressive," or outside the realm of zealous advocacy in its defense of RPI's claims, let alone that any tactic was facially unreasonable in, or disproportional to, the defense of the $3.1 billion class action in RPI/DBNTC I.  Without facts, RPI's allegations are not entitled to an "assumption of truth."  Iqbal, 556 U.S. at 679-80.  That RPI's allegations are mere boilerplate is demonstrated by lawsuits identical to this one that RPI has brought against three other RMBS trustees that it also sued in 2014, in which RPI uses the same naked assertions, labels, and conclusions.[23]  RPI does not plead any facts in support of its claims of unreasonableness, and for that reason they do not pass muster under Iqbal.

---

N.Y.2d 686 (1989).

[23]     See RPI/WF II, Dkt.# 1, ¶¶ 15-16; RPI/USB II, Dkt.# 1, ¶¶ 15-16; RPI/HSBC II, Dkt.# 1, ¶¶ 15-16.  On a motion to dismiss, this Court may take judicial notice of these other court filings.  In re Old Carco LLC, 509 F. App'x 77, 79 (2d Cir. 2013).

The extent to which RPI is grasping at straws is demonstrated by the examples that RPI cites for unreasonableness.  For example, RPI alleges that the Trustee "filed an unsuccessful motion to dismiss."  RPI/DBNTC II, Comp. ¶ 15.  However, the denial of the Trustee's motion to dismiss was administrative, with leave to re-file in light of the Second Circuit's ruling that TIA claims are not viable as to trusts created by PSAs.  RPI/DBNTC I, Dkt.# 50.  On the Trustee's second motion to dismiss, the Court dismissed RPI's derivative claims and acknowledged that RPI had withdrawn its losing TIA claim.  Id., Dkt.# 100, pp. 20-22.  RPI also notes that the Trustee "opposed two class certification motions."  RPI/DBNTC II, Comp. ¶ 15.  Yet, the Trustee defeated RPI's first class certification motion.  RPI/DBNTC I, Dkt.# 350.  The Court permitted RPI to file a new class certification motion with an adequately defined class, and RPI elected to attempt to do so.  The Trustee opposed that motion, which is now sub judice.  RPI apparently believes that the only reasonable course for the Trustee would have been to let RPI's first class certification motion go unopposed, thereby allowing that inadequately defined class to be certified, even though this Court found that it could not.

## III.    RPI'S NON-CONTRACTUAL CLAIMS SHOULD BE DISMISSED

All of RPI's non-contractual claims should be dismissed for several reasons.  There are also several claim-specific reasons why RPI's non-contractual claims fail.

### A.    RPI's Non-Contractual Claims Should Be Dismissed Because They Are Premised Upon The False Assumption That The Trustee Is Not Entitled To The Indemnification At Issue

The Trustee is contractually entitled to the indemnification that RPI challenges.  Supra, Sec. II.  That is a complete defense to all of RPI's non-contractual claims because they are all based upon the premise that the Trustee's indemnification is not authorized by the PSAs.[24]

---

[24]    RPI/DBNTC II, Comp., ¶ 52 (unjust enrichment claim premised upon "use of Covered Trust funds to

(Continued note)

**B.      RPI's Non-Contractual Claims Should Be
          Dismissed Because They Are Duplicative Of RPI's Contract Claim**

Tort claims that rest on the same facts and seek the same damages as contract claims

should be dismissed as duplicative.  See, e.g., AD Rendon Commc'ns., Inc. v. Lumina Ams. Inc.,

2007 WL 2962591, *5 (S.D.N.Y. Oct. 10, 2007).  A plaintiff cannot state a separate tort claim

that "'adds nothing by way of legal liability, and only seeks to explain the possible motives of

defendants' for their alleged breach of contract."  In re Musicland Holding Corp., 386 B.R. 428,

441 (S.D.N.Y. 2008) (Sweet, J.).[25]  RPI's non-contractual claims are barred because they are all

expressly predicated upon the Trustee's alleged breach of the PSAs and seek the same damages.

Compare RPI/DBNTC II, Comp., ¶¶ 42-43, 46, & 47 with id., ¶¶ 52, 54-56, 60, 62, & 65.

**C.      RPI's Non-Contractual Claims Should Be
          Dismissed They Are Barred By The Economic Loss Doctrine**

RPI cannot recover in tort for purely economic losses.  Under the economic loss doctrine,

"a contracting party seeking only a benefit of the bargain recovery ... may not sue in tort

notwithstanding the use of familiar tort language in its pleadings."  17 Vista Fee Assocs. v.

Teachers Ins. & Annuity Ass'n of Am., 693 N.Y.S.2d 554, 559 (1st Dep't 1999); see also Cnty.

of Suffolk v. Long Island Lighting Co., 728 F.2d 52, 62-63 (2d Cir. 1984).  In other cases

brought by investors against RMBS trustees, a court has dismissed tort claims under the

economic loss doctrine.  See, e.g., Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n, No. 14-cv-

---

finance the defense of [RPI/DBNTC I]"), ¶ 55 (conversion claim premised upon "using Covered Trust funds for
unlawful and unreasonable legal fees and costs"), ¶ 65 (breach of trust claim base upon premise that "unpermitted
legal fees and costs were billed to and paid from the Covered Trust assets); see also Karmilowicz v. Hartford Fin.
Servs. Grp., Inc., 2012 WL 3734449, *4 (2d Cir. 2012) (valid contract is defense to unjust enrichment claim); Wolf
v. Nat'l Council of Young Israel, 694 N.Y.S.2d 424, 425 (2d Dep't 1999) (valid contract is defense to conversion
claim premised upon alleged breach of duty contained within contract).

[25]     See also Fixed Income Shares:  S Series M v. Citibank N.A., 130 F.Supp.3d 842, 857 (S.D.N.Y. 2015)
(dismissing tort claims; tortious actions "are essentially the same ones that give rise to Plaintiffs' breach of contract
claims"); Millennium Ptrs., L.P. v. U.S. Bank Nat'l Ass'n, 2013 WL 1655990, *4 (S.D.N.Y. April 17, 2013); Rolls-
Royce Motor Cars, Inc. v. Schudroff, 929 F.Supp.117, 124 (S.D.N.Y. 1996) (conversion claim duplicative "when
damages are merely being sought for breach of contract").

10116-KBF, 2016 WL 1169515, *9 (S.D.N.Y. Mar. 22, 2016).  Here, because RPI only alleges economic harm (RPI/DBNTC II, Comp., ¶¶ 44-46, 52, & 56) its tort claims should be dismissed.

### D.      RPI's Unjust Enrichment Claim Should Be Dismissed

An unjust enrichment claim requires that:  (1) the defendant benefitted; (2) at the plaintiff's expense; and (3) equity and good conscience require restitution.   Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of NJ, Inc., 448 F.3d 573, 586 (2d. Cir. 2006).

RPI's unjust enrichment claim fails.  First, unjust enrichment claims are precluded "whenever there is a valid and enforceable contract governing a particular subject matter."  Id., at 587.  Here, the PSAs are valid and enforceable contracts that govern the subject matter of this dispute.  RPI agrees.  See, e.g., RPI/DBNTC II, Comp., ¶ 42.  Second, the Trustee has not received any benefit at RPI's expense.  As explained supra Sec. II.A.2., the Trustee is contractually entitled to indemnification of the legal fees and expenses at issue before any funds flow through the Covered Trusts to certificateholders.  Because RPI was never entitled to those funds, the Trustee did not receive them at RPI's expense.  Moreover, as explained supra Sec. I.A., the certificates that RPI purports to hold have been wiped out.  Thus, even if the Trustee's indemnification came "at the expense" of other investors, it did not and would not come at the expense of RPI.

### E.      RPI's Conversion Claim Should Be Dismissed

RPI's conversion claim should be dismissed because RPI never owned, possessed, or controlled the trust funds that were used to indemnify the Trustee.  "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights."  Colavito v. New York Organ Donor Network, Inc., 8 N.Y.3d 43, 50 (2006).  A conversion claim will not lie where the property at issue was never within plaintiff's ownership, possession, or control.

Nakahata v. New York–Presbyterian Healthcare System, Inc., 2011 WL 321186, *6 (S.D.N.Y. Jan. 28, 2011), aff'd, 723 F.3d 192 (2d. Cir. 2013).  Here, RPI cannot establish that it owned, possessed, or controlled the trust funds before they were used to indemnify the Trustee.  As explained supra Sec. II.A.2., the Trustee is contractually entitled to indemnification of the legal fees and expenses at issue before any funds flow through the Covered Trusts to certificateholders.  Thus, RPI never owned, possessed, or controlled those trust funds.

> **F.    RPI's Breach Of Trust And Equitable Accounting Claims Should Be Dismissed Because They Are Based Upon Extra-Contractual Duties That The Trustee Does Not Owe To RPI**

RPI alleges that the Trustee committed a breach of trust because, under the common law, the Trustee had a duty to RPI to only seek indemnification of permitted legal fees and expenses incurred for the benefit of the Covered Trusts.  RPI/DBNTC II, Comp., ¶ 62.  A breach of trust claim requires the existence of a specific extra-contractual duty.  See New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 316 (1995).  Contrary to RPI's allegation that "[u]nder the common law, [the Trustee] had a duty to [RPI] … to only seek indemnification of permitted legal fees and costs incurred for the benefit of the Covered Trusts" (RPI/DBNTC II, Comp., ¶ 60), the Trustee has no such common law duty.  See Elliott Assocs., 838 F.2d at 71 ("the duties of an indenture trustee are strictly defined and limited to the terms of the indenture"; "[i]n view of the foregoing, it is no surprise that we have consistently rejected the imposition of additional duties on the trustee"); RPI/DBNTC I, Dkt.# 100, p. 18.  Because no such duty exists, RPI's breach of trust claim should be dismissed.

RPI also alleges that it is entitled to an equitable accounting "of the legal fees and costs paid for using Covered Trust assets to determine the amount improperly taken."  RPI/DBNTC II, Comp., ¶ 71.  An equitable accounting claim requires the existence of a fiduciary duty.  Wilde v. Wilde, 576 F.Supp.2d 595, 607 (S.D.N.Y. 2008).  This claim fails because the Trustee does not

owe RPI a fiduciary duty.  Rather, the duties of the Trustee are circumscribed by the PSAs, not

the common law.  See Elliott Assocs., 838 F.2d at 71; RPI/DBNTC I, Dkt.# 100, p. 18.[26]  RPI's

claim for an equitable accounting should be dismissed.[27]

## IV.     ALTERNATIVELY, IF THE COURT IS NOT INCLINED TO DISMISS RPI'S CLAIMS, IT SHOULD STAY THIS CASE PENDING RESOLUTION OF *RPI/DBNTC I*

Courts have "broad discretion to stay proceedings as an incident to ... [their] power to

control ... [their] own docket."  Clinton v. Jones, 520 U.S. 681, 706 (1997).  When analyzing a

request to stay, courts consider:  (1) the private interests of and burden on the defendants; (2) the

private interests of the plaintiffs in proceeding expeditiously, balanced against the prejudice to

the plaintiffs if delayed; (3) the court's interests; (4) the interests of persons not parties to the

case; and (5) the public interest.  Kappel v. Comfort, 914 F.Supp. 1056, 1058 (S.D.N.Y. 1996).

**First**, the burden on the Trustee militates in favor of a stay.  Absent a stay, the Trustee or

the Covered Trusts will be forced to expend significant resources, which could be avoided if in

RPI/DBNTC I the Trustee is not found to have acted with gross negligence or engaged in willful

misconduct.  Continued proceedings here may entail motion practice, as well as merits and class

discovery, including potentially costly ESI discovery.  Courts grants stays in just these

---

[26]     To the extent RPI attempts to assert that the occurrence of an Event of Default ("EoD"), as that term is defined in the PSAs, created a common law fiduciary duty flowing from the Trustee to investors, that assertion fails for at least two reasons.  First, RPI has failed to establish the occurrence of any EoD with respect to the Covered Trusts in RPI/DBNTC I.  Second, the PSAs merely provide that, following an EoD, the Trustee assumes a duty to act as a prudent person would.  And, that "prudent person" standard is defined by the PSAs, not common law.  See Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.a.r.l., 996 N.Y.S.2d 476, 494 n. 11 (Sup. Ct. N.Y. Cty. 2014), rearg. denied, 2015 WL 498875 (Sup. Ct. N.Y. Cty. Feb. 5, 2015) ("[A]n obligation will be imposed upon the indenture trustee post-default to act prudently, but its duties will continue to be circumscribed by the indenture.").

[27]     Moreover, RPI's equitable accounting claim should be dismissed because it would require the Trustee to reveal privileged materials to its adversary.  "[C]orrespondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, ..., fall within the privilege."  Diversified Grp., Inc. v. Daugerdas, 304 F.Supp.2d 507, 514 (S.D.N.Y. 2003).  As Magistrate Judge Moses noted: "I'm sure it has not escaped either side's attention that there are massive difficulties involving privilege and work product in a request by plaintiff to see defendants [sic] legal bills more or less in real time."  RPI/DBNTC I, Dkt.# 359, at 5:16-20.

circumstances.[28]  These costs may be unnecessary in light of the ongoing RPI/DBNTC I.

**Second**, RPI will not be prejudiced by a stay.  RPI's argument that the Trustee is not entitled to indemnification for its legal fees and expenses in RPI/DBNTC I relies upon the flawed assumption that the Trustee is not indemnified for defending against mere allegations of negligence and willful misconduct.  Critically, if in RPI/DBNTC I, the Trustee is not found to have acted with gross negligence or engaged in willful misconduct, then RPI's claims in this case will be moot.  Moreover, by RPI's own judicial admissions, the Certificates that RPI alleges it holds were wiped out and written down to zero in 2012.  The only harm that RPI alleges is the possibility of a diminished hypothetical future recovery in RPI/DBNTC I.  Thus, the **only** way that RPI could suffer harm under RPI's own theory of liability is if there is a finding of liability in RPI/DBNTC I that includes an adjudication that the Trustee acted with gross negligence or engaged in willful misconduct, and a recovery flows through the Covered Trusts to RPI.  If the Trustee is not found to have acted with gross negligence or engaged in willful misconduct (or not to be liable at all) in RPI/DBNTC I, then there will be no issue to be resolved in this case.  This case should, therefore, be stayed until RPI/DBNTC I is resolved.

Moreover, there is nothing exigent about RPI's claims.  RPI waited until August 2017 (three years after it became aware of the Trustee's indemnification and could have sought to raise these allegations in RPI/DBNTC I) to bring these claims.  And, RPI does not allege that the Trustee will be unable to repay the Covered Trusts if the Court ordered such repayment.

**Third**, judicial efficiency militates in favor of a stay.  Absent a stay, the motion practice and discovery discussed above will require the Court's attention and resources.  Such costs will

---

[28]     Boelter v. Hearst Communications, Inc., 2016 WL 361554, *5 (S.D.N.Y. Jan. 28, 2016); Finn v. Barney, 2008 WL 5215699, *3 (S.D.N.Y. Dec. 8, 2008) (granting defendant's stay motion; "[p]ermitting Plaintiff to engage in discovery in his action, which clearly arises out of the same nucleus of common facts as the pending class action, would prejudice Defendants through the imposition of premature and potentially duplicative discovery burdens").

be pointless if the Trustee is not found to have acted with gross negligence or engaged in willful misconduct (or to be liable at all) in RPI/DBNTC I.  **Finally**, the interests of non-parties and the public are not served by the parties and the Court wasting their own resources in litigating issues that may be rendered moot by rulings in RPI/DBNTC I.

## **CONCLUSION**

For the reasons above, the Complaint should be dismissed in its entirety with prejudice.

Alternatively, this case should be stayed pending resolution of RPI/DBNTC I.

Dated: New York, New York                    Respectfully submitted,
      October 10, 2017                        MORGAN, LEWIS & BOCKIUS, LLP
                                                By: */s/ Bernard J. Garbutt III*